UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
MARY JANE COLSTON, :
:
       Plaintiff, : CASE NO. 1:12-CV-204
:
  v. : OPINION & ORDER
: [Resolving Doc. Nos. 39; 40]
CLEVELAND PUBLIC LIBRARY, et al., :
:
       Defendants. :
:
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

    In this case, Plaintiff Mary Jane Colston, a Security Officer who continues in her employment with Defendant, alleges that Defendants Cleveland Public Library (and individual employees—collectively, "Library") and the former Assistant Chief of Security, Melvin Abrams, sexually harassed her, retaliated and discriminated against her on account of her gender, and intentionally inflicted emotional distress on her. The Library and Abrams have made separate motions for summary judgment, [Docs. 39; 40], and Colston opposes, [Docs. 47, 49]. For the following reasons, the Court **GRANTS** summary judgment to both the Library and Abrams.

**I.**

    On June 9, 2008, Plaintiff Colston starting working as a Security Officer—the only female in that position—at the Cleveland Public Library. Library Security Officers are represented by the Teamsters and are subject to a collective bargaining agreement. Colston complains that Defendant retaliated against her by laying her off for a period of time. In accordance with the collective bargaining agreement, the Library laid off the two lowest-seniority employees on June 6, 2010:

-1-

Case No. 1:12-CV-204
Gwin, J.

Colston (female) and Officer Joe Smith (male). On November 16, 2010, the Library rehired Colston and Officer Joe Smith; Colston currently works at the Library as a Security Officer.

Colston also alleges that during her employment with the Library, her coworkers subjected her to sexually offensive and otherwise harassing conduct and that she complained four times about that conduct to the Library. Two formal complaints and resulting investigations are documented.[1/] On November 4, 2009, Colston complained to Tim Diamond (the Assistant to the Library's Director) that inappropriate language was being used in the Security Department and that she felt she was in a hostile work environment. The Library hired an outside investigator; discovered that co-defendant Melvin Abrams (Assistant Security Chief and Colston's supervisor) used inappropriate language, made sexual innuendoes, and revealed employees' personal information; and ultimately suspended Abrams for five days. [*See* Doc. 39-2 at 58]. In addition, the Library issued a "Counseling Memo" to Michael Janero, the Chief of Security Operations, for failing "to step in to stop the unacceptable conduct[,] . . . [and for] let[ting] it be widely known that [he] [was] not partial to women officers." [*Id.* at 61].

In April 2011, Colston made a second formal complaint and met with Library Director Felton and Human Resources Administrator Sharon Tufts. Colston told Felton and Tufts that her coworkers—including Melvin Abrams—were threatening and intimidating her. Again, the Library hired an outside investigator and eventually concluded that Abrams had violated workplace policies. The Library put Abrams on administrative leave and scheduled a pre-termination hearing apparently anticipating that he would be fired.; Abrams resigned before that hearing ended.

---

[1/]Colston says she complained to Melvin Abrams within "the first couple of months of [her] hire" and to Felton Thomas "at maybe midway or ending of 2008." [Doc. 39-3 at 29]. The record does not contain any other indication of those complaints.

Case No. 1:12-CV-204
Gwin, J.

Colston filed a complaint in Ohio state court alleging six causes of action against the Library, Felton Thomas, Sharon Tufts, Michael Janero, and Melvin Abrams: (1) sexual discrimination and harassment in violation of Ohio Revised Code (O.R.C.) § 4112.02; (2) negligent hiring, retention, supervision, and failure to train; (3) retaliation; (4) intentional infliction of emotional distress; (5) hostile work environment in violation of the Fifth and Fourteenth Amendments;[2/] and (6) gender discrimination and harassment in violation of "Title VII, the Civil Rights Act of 1964, and 42 U.S.C.A. § 2002e-2 . . . ."[3/] [Doc. 1-1]. The Library removed to this court, [*see* Doc. 1], and now moves for summary judgment on all claims against the Library, Felton Thomas, Sharon Tufts, and Michael Janero, [Doc 39]. Co-defendant Melvin Abrams separately moves for summary judgment. [Doc. 40]. Colston has not met her burden to show genuine issues of material fact, and all Defendants are entitled to judgment, so the Court grants both motions.

**II.**

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). And the nonmoving party must "present sufficient evidence through the pleadings and the materials produced through discovery from which a jury could reasonably find in

---

[2/] Defendants argue that summary judgment is appropriate on this count because the Fifth Amendment does not apply to the states and the Fourteenth Amendment does not "provide an avenue for a plaintiff claiming constitutional violations." [Doc 39-1 at 20; *see* Doc. 40-1 at 20]. Colston did not respond or even mention this claim in her oppositions to Defendants' motions for summary judgment. The Court therefore concludes that Colston has abandoned that claim and grants Defendants' motions for summary judgment on Colston's Fifth and Fourteenth Amendment claim.

[3/] Abrams, along with the other individual defendants, cannot be held liable under Title VII. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997) ("[A]n individual employee/supervisor, who does not otherwise qualify as an 'employer,' may not be held personally liable under Title VII."). Likewise, Colston cannot assert count 2 (negligent hiring, supervision, retention) against the individual Defendants. Accordingly, to the extent Colston makes those claims, the Court grants the individual Defendants' motions for summary judgment on counts 2 and 6.

-3-

Case No. 1:12-CV-204
Gwin, J.

[its] favor." *Berryman v. SuperValu Holdings, Inc.*, 669 F.3d 714, 717 (6th Cir. 2012). "A party asserting that a fact . . . is genuinely disputed must . . . [cite] particular parts of materials in the record," Fed. R. Civ. P. 56(c), and "[i]f a party fails to properly support an assertion of fact . . . the court may . . . consider the fact undisputed for the purposes of the motion," Fed. R. Civ. P. 56(e). In deciding a motion for summary judgment, the Court "considers the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of the nonmoving party." *LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005).

### III.

Colston's opposition alleges one harassing incident after another but makes only vague references to the "hudreds [sic] of pages of notes that detailed all the areas of harassment, retaliation and discrimination she faced." [Doc. 49 at 2]. She fails to "point to evidence in the record demonstrating a genuine dispute of material fact[,] . . . [or to] provid[e] some affirmative support for [her] own position." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 534 (6th Cir. 2012). This Court will not and "need not independently comb through the record and establish that it is bereft of a genuine issue of material fact before granting summary judgment." *Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 734 (6th Cir. 2011).

A. Gender Discrimination (Counts 1 & 6)[4]

Title VII prohibits "discriminat[ion] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race,

---

[4] Title VII and Ohio state-law discrimination claims are subject to the same standards: "the prima facie case requirements are essentially the same under the Ohio Revised Code § 4112.02 . . . [so Colston's] federal and state-law claims of gender discrimination may be disposed of together." *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 457 (6th Cir. 2004) (citation omitted).

-4-

Case No. 1:12-CV-204
Gwin, J.

color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at *discrimination* because of sex." Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (internal quotation marks, brackets, and ellipsis omitted).

"In order to establish a prima facie case of gender discrimination under Title VII, [Colston] must show that . . . she was treated differently from similarly situated members of the unprotected class." Knox v. Neaton Auto Products Mfg., Inc., 375 F.3d 451, 456-457 (6th Cir. 2004). But Colston does not provide any evidence that she "was treated differently than similarly situated" male security guards. Id.

Likewise, to establish "hostile environment sexual harassment under R.C. § 4112, [Colston] must establish that . . . the harassment was based on sex . . . ." Id. at 459. But Colston has *not* established that "but for her sex she would not have been the object of the harassing behavior." Monak v. Ford Motor Co., 95 F. App'x 758, 765 (6th Cir. 2004). In fact, the behavior Colston complains about was directed to all security guards—men and women alike. Colston says that Abrams "talked about the men's personal lives . . . as if I [Colston] was one of the guys," and she agreed that "the ridicule and negative comments" were directed to male officers.[5/] [Doc. 39-3 at 14, 18].

Moreover, under Ohio law, "[c]onduct that is merely offensive [] is not actionable. . . . [It]

---

[5/] Colston apparently believes that the Library's disciplinary actions and against Janero and Abrams (with, again, vague or no citation to the record) prove that she was sexually harassed and subject to a hostile work environment. They do nothing of the sort. Nor does her inaccurate rewording of the Janero disciplinary letter raise a genuine issue of material fact. Janero, as the letter actually says, "let it be widely known that [he] [was] not partial to women officers." [Doc. 39-2 at 61]. But Colston doesn't connect that feeling to any action against her. Likewise, the Library started a disciplinary hearing for Abrams—he was not proven to have sexually harrassed Colston.

Case No. 1:12-CV-204
Gwin, J.

must be severe or pervasive enough to create an environment that not only the victim subjectively regards as abusive but also a reasonable person would find hostile or abusive." *Knox*, 375 F.3d at 459. In her opposition to Abrams's motion for summary judgment, Colston cites her affidavit as proof that "Abrams made sexual innuendos, gave [her] uncomfortable looks, made jokes, commented about [her] body, and made other statements based upon my being a female on an almost daily basis."[6] [Doc. 47-1; *see* Doc. 47]. First, those statements are "conclusory allegations and subjective beliefs which are wholly insufficient evidence to establish" Colston's claims. *Mitchell v. Toledo Hosp*, 964 F.2d 577, 585 (6th Cir. 1992). Second, even those allegations do not suffice to show "severe or pervasive" and "hostile or abusive" treatment—Colston doesn't point to specific incidents or support her broad claims of harassment.

Even in the light most favorable to Colston (an admittedly difficult task for the Court, given that Colston utterly fails to support her claims with any reference to the record), the workplace environment and Abrams's conduct—while deplorable—was not "because of" Colston's gender.[7] Rather, Abrams acted boorishly to everyone.

B. Retaliation (Count 3)

Colston's prima facie case of retaliation (under either Title VII or Ohio state law) requires her to show, among other things, that "there was a causal connection between the protected activity and the adverse employment action." *Allen v. Mich. Dep't of Corrs.*, 165 F.3d 405, 412 (6th Cir.

---

[6] As Defendants correctly argue, "a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony." *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997). Accordingly, the Court rejects Colston's attempt to create issues of fact with her affidavit by disputing, modifying, or contradicting her deposition testimony.

[7] Colston's briefing mentions race discrimination in violation of O.R.C. § 4112—her complaint does not allege discrimination on the basis of her race. If she is asserting that claim, the Court rejects it on the same grounds as it rejects her gender discrimination claims.

Case No. 1:12-CV-204
Gwin, J.

1999). Colston is apparently claiming retaliation as to a number of adverse employment actions: discipline, harassment, failure to promote, layoff, and denial of sick time. But, again, she fails to support any of those with facts in the record.

> [T]o show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action[,] . . . [and] evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.

*Id.* at 413. As to discipline, failure to promote, and denial of sick time, Colston does not make any affirmative showing that those events even occurred, much less a causal connection to any protected activity. [*See* Doc 49 at 15]. And the harassment claim fails for the same reasons as above: Colston hasn't provided any evidence that she was harassed because of her gender.

As to Colston's layoff, she asserts that "[s]uch close proximity with the results of the first investigation and the layoff create a material issue of fact for the jury." [*Id.*] "[B]ut temporal proximity, standing alone, is not enough to establish a causal connection for a retaliation claim." *Spengler v. Worthington Cyclinders*, 615 F.3d 481, 494 (6th Cir. 2010). Colston's protected activity—filing her first complaint about harassment and gender discrimination—occurred on November 4, 2009. The Library laid off Colston on June 6, 2010. Those dates are not temporally proximate, especially in light of the Library's obligating to comply with the collective bargaining agreement seniority provisions.

Furthermore, Colston doesn't allege any other intervening facts that suggest her layoff was retaliatory. In fact, a male security guard (Joe Smith), who had never made a gender discrimination complaint, was laid-off along with Colston pursuant to the Collective Bargaining Agreement. *See, e.g.*, *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) ("[W]here some time

-7-

Case No. 1:12-CV-204
Gwin, J.

elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.").

Accordingly, the Library and Abrams are entitled to judgment on Colston's retaliation claim.

## C. Intentional Infliction of Emotional Distress

The Library also asserts that it is entitled to judgment on Colston's Intentional Infliction of Emotional Distress claim. The Court agrees.

"[P]laintiffs claiming severe and debilitating emotional injury must present some guarantee of genuineness in support of their claim, such as expert evidence, to prevent a court from granting summary judgment in favor of the defendant." *Taylor v. Streicher*, 465 F. App'x 414, 423 (6th Cir. 2012) (internal quotation marks omitted) (citing *Knief v. Minnich*, 658 N.E.2d 1072, 1075 (Ohio Ct. App.1995)). Colston claims that she "was examined by her doctors and found to be suffering from emotional distress as a result of her work environment," and that she "missed many days away from work due to the treatment of CPL officers." But Colston does not support her claim with evidence of that emotional distress, and her affidavit is insufficient to meet her burden. *Jacob v. Fadel*, No. CV-530236, 2006 WL 2790399 at *4 (Ohio Ct. App. Sept. 28, 2006) ("[A Plaintiff's] affidavit[] alone [is] not sufficient to sustain the summary judgment motion against them on the issue of intentional infliction of emotional distress."). Accordingly, the Library and Abrams are entitled to judgment on Colston's intentional infliction of emotional distress claim.

## D. Negligent Retention, Hiring, Supervision, and Failure to Train (Count 2)

Finally, Colston asserts an Ohio state-law claim for "negligent retention, hiring superviso[n] and training due to the actions of officer [sic] Dyckes and Abrams." [Doc. 49 at 15]. Under Ohio

-8-

Case No. 1:12-CV-204
Gwin, J.

law, "an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock v. Pressnell*, 527 N.E.2d 1235, 1244 (Ohio 1988). Thus, Colston's negligent hiring, supervision, or retention claims based on underlying gender discrimination or harassment must fail along with those substantive claims.

Colston's assault claim against Officer Dycks (which, as the Library correctly points out, Colston first raised in her opposition brief) also fails. Even if Dycks actually assaulted Colston with a threat she heard secondhand (doubtful), and even if Colston can raise this claim for the first time in an opposition brief (very doubtful), to prove her negligent supervision (or retention or hiring) claim, Colston must prove that the Library reasonably foresaw Dycks's assault. That is, Colston must prove that "the employer knew or should have known of the employee's propensity to engage in similar criminal, tortuous, or dangerous conduct." *Armaly v. City of Wapakoneta*, No. 2-05-45, 2006 WL 1976191, at *11 (Ohio Ct. App. July 17, 2006) (internal quotation marks omitted). Quite simply, there is no evidence to suggest that the Library knew or should have known that Dycks had a propensity to threaten anyone's life. Accordingly, the Library is entitled to summary judgment on all of Colston's negligent hiring, retention, supervision, and training claims.

**IV.**

In the end, Colston's story is a troubling one. Her brief describes, at best, an unpleasant workplace. But the time for pleading has passed. Defendants' motions for summary judgment obligated Colston to collect and identify those portions of the record supporting her claims. Because

-9-

Case No. 1:12-CV-204
Gwin, J.

she did not, the Court **GRANTS** Defendants' motions for summary judgment.

    IT IS SO ORDERED.


Dated: August 13, 2012                    s/       *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE